UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TODD DIAMOND,

      Plaintiff,

v.                                            Case No. 19-C-311

SANDRA CALAWAY,

      Defendant.

**DECISION AND ORDER**

On April 16, 2018, Plaintiff Todd Diamond filed suit against Thomas Calaway, Thomas' wife Lisa, and his sister Sandra Calaway in the United States District Court for the Southern District of New York asserting claims for breach of contract, misrepresentation, unjust enrichment, civil conspiracy, and aiding and abetting fraud, all arising out of two separate loans Diamond made to Thomas Calaway in the aggregate amount of $500,000. *Diamond v. Calaway*, No. 18-3238, Dkt. No. 6 (S.D.N.Y.). Sandra Calaway was dismissed from that lawsuit for lack of personal jurisdiction, Dkt. No. 39, and a default judgment was entered against Thomas and Lisa Calaway on April 29, 2019. In the meantime, Diamond filed this action against Sandra on February 28, 2019, based on essentially the same allegations and asserting claims for fraud and civil conspiracy. This court has subject-matter jurisdiction under 28 U.S.C. § 1332. Presently before the court is Defendant Sandra Calaway's motion to dismiss Plaintiff's complaint for lack of standing. For the reasons stated below, Defendant's motion will be granted.

## ALLEGATIONS OF COMPLAINT

Plaintiff was a member of Nima Scrap LLC (Nima), a company that was in the business of purchasing high-quality steel skull and iron slag concentrate in Santiago, Chile, processing the material, and selling that material. Around July 2012, Nima took out a bridge loan (the Bridge Loan) from a third-party creditor in the amount of $500,000, which Plaintiff personally guaranteed. In early 2013, Nima sought outside funding to maintain its operations and meet its financial obligations. Plaintiff could no longer directly fund Nima and met with Thomas and Lisa Calaway in the hope that they would agree to fund Nima to allow it to meet its financial obligations. Thomas agreed to fund Nima and fulfill the Bridge Loan. The plan was as follows: Plaintiff would lend $250,000 to Thomas, who would then use the money to secure other leveraged assets he held. Thomas would then repay Plaintiff that amount plus interest and also provide $700,000 in additional funding to satisfy the Bridge Loan, once a trust in which he was a beneficiary released his interest.

Before Plaintiff loaned him the $250,000, Thomas told Plaintiff that he would be able to timely repay him, and reiterated that the trust was set to release his interest in March 2013. Lisa, Thomas' wife, became personally involved in the agreement when she directed Plaintiff to deposit the loaned funds into a Pioneer Credit Union account that she owned and controlled. Plaintiff agreed to this arrangement and wired $250,000 to the account in February 2013. Thomas did not perform his obligations under the agreement and refused to repay Plaintiff on March 5, 2013.

In April 2013, Plaintiff and Thomas began negotiating a second loan. Under their oral agreement, Plaintiff agreed to lend Thomas an additional $250,000. In exchange, Thomas agreed to repay the second loan amount plus 15% interest within 45 days of the date of the loan and

perform his obligations under the original agreement. Thomas indicated that he would obtain funds from the trusts or other assets so that he could timely repay Plaintiff. Lisa Calaway later emailed Plaintiff and directed him to quickly wire the money into her Pioneer Credit Union account. Based on Thomas' representations, Plaintiff wired $250,000 to the account on April 26, 2013. Thomas refused to repay Plaintiff within 45 days of receipt of the loaned funds as required by the oral contract or the amount due under the original agreement.

It was at this point, according to the complaint, that Defendant Sandra Calaway enters the picture. Plaintiff alleges that Defendant first became involved with the arrangement in June 2013, after Plaintiff had loaned Thomas the $500,000. Beginning in June 2013 and over the course of the following six months, Defendant is alleged to have told Plaintiff three times over the telephone that the trust interest would soon be released to Thomas, that she was speaking with a Milwaukee Foley & Lardner attorney regarding the trust, and that Thomas would repay Plaintiff once the trust interest was released. Based on these statements, Plaintiff did not seek immediate repayment of the loans, which allegedly resulted in Plaintiff continually accruing damages under his obligations of the Bridge Loan.

Plaintiff has since made demands to Thomas to repay the amounts due under the agreements, but he has refused to do so. Because Thomas did not fulfill his promises to Plaintiff, Nima ceased its operation due to insufficient funds and its inability to meet its financial obligations, including defaulting on the Bridge Loan. Plaintiff was sued as a result and has since incurred substantial damages, including the loss of $650,000 he invested in Nima's operations, the $370,000 in attorney's fees that he incurred to defend the lawsuits related to the default, and a settlement of a confidential amount paid to a third-party creditor for the Bridge Loan.

**LEGAL STANDARD**

In considering a motion to dismiss, the court construes all allegations in the complaint in the light most favorable to the plaintiff, accepts all well-pleaded facts as true, and draws all inferences in favor of the non-moving party. *Estate of Davis v. Wells Fargo Bank*, 633 F.3d 259, 533 (7th Cir. 2011). To state a cognizable claim under the federal notice pleading system, the plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It is not necessary for the plaintiff to plead specific facts and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, a complaint that offers "labels and conclusions" or a "formulaic recitation of the elements of a cause will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." *Id*. (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). The complaint's allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). "[T]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

**ANALYSIS**

Although Defendant has moved for dismissal on the ground that Plaintiff does not have standing to bring his claims, her argument seems more supportive of the conclusion that Plaintiff

4

has failed to state a claim upon which relief can be granted. Plaintiff has sued Defendant for fraud and civil conspiracy to commit fraud. The substantive law applicable to this case is the law of the State of Wisconsin. *Camp v. TNT Logistics Corp.*, 553 F.3d 502, 505 (7th Cir. 2009) (noting that because neither party raised a choice of law issue, the substantive law of the forum state applies). A claim for fraudulent misrepresentation under Wisconsin law requires that the following elements be established: (1) the defendant made a representation of fact to the plaintiff; (2) the representation of fact was false; (3) the defendant knew the representation was false and made it with intent to deceive and to induce the plaintiff to act on it to his detriment; and (4) the plaintiff believed and relied upon the misrepresentation to his detriment. *Tietsworth v. Harley-Davidson, Inc.*, 2004 WI 32, ¶ 13, 270 Wis. 2d 146, 677 N.W.2d 233 (citing *Ollerman v. O'Rourke Co., Inc.*, 94 Wis.2d 17, 26, 288 N.W.2d 95 (1980)). It is as to the last element that the complaint in this case fails.

The complaint alleges that Plaintiff loaned Thomas $500,000 months before he spoke to Defendant. It would thus seem to follow that nothing Defendant said to Plaintiff induced him to loan any money to Thomas. Given these allegations, it is difficult to see how any statement made to Plaintiff by Defendant could have led to his detriment or caused him any harm. According to the complaint, "Mr. Diamond's reliance on Sandra Calaway's statements resulted in continually accruing damages under his obligations under the Bridge loan." Compl. ¶ 39. This is nothing more than a conclusion, however, and the complaint is bereft of any factual allegations that suggest it is even plausible. There is no allegation, for instance, as to what action Plaintiff could have taken at the point in time that he spoke to Defendant that would have made any difference. Defendant should not have to incur the cost of defending a federal lawsuit in the absence of any plausible reason to believe that the statements she is alleged to have made to Plaintiff caused him any harm.

Absent some detriment to Plaintiff caused by his reasonable reliance on the statements Defendant is alleged to have made, Plaintiff has no claim against her.

## CONCLUSION

For these reasons, Defendant's motion to dismiss (Dkt. No. 9) is **GRANTED**. The complaint fails to state a claim upon which relief can be granted and will be dismissed for that reason pursuant to Fed. R. Civ. P. 12(b)(6). The dismissal is without prejudice, however, and Plaintiff will be allowed thirty (30) days from the date of this order in which to file an amended complaint curing the defect noted herein. Plaintiff is encouraged to carefully review Fed. R. Civ. P. 11(b) before filing his amended complaint. If no amended complaint is filed within the time allowed, the case will be dismissed with prejudice.

**SO ORDERED** this  1st  day of October, 2019.

 s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court